ACREE, JUDGE:
*307 Steven Turner appeals from the Bell Circuit Court's January 11, 2016 judgment and sentence entered upon a jury verdict finding Turner guilty of several drug-related crimes. The chief issue before us is whether Turner's sentence for second-degree trafficking in a controlled substance was impermissibly enhanced in violation of KRS [1] 532.080(10). We conclude it was not. Regarding his remaining three issues, we fail to find palpable error. Accordingly, we affirm.
FACTS AND PROCEDURE
On May 29, 2015, Detective Kevin Goodin of the Pineville Police Department received an unsolicited text message on his cell phone from an unknown number. The message stated, "It's Steve. Do you all need any joints, strips, Neurontins, 2 mg. Klonipins? Steve." Detective Goodin exchanged several messages with the sender, who ultimately agreed to meet at the "pool room."
Accompanied by another officer, Detective Goodin traveled to the pool room on Kentucky Avenue in Pineville, Kentucky. He entered the rear of the pool room, as directed by the text message sender, while the other detective stayed out front. As he entered, the detective observed a man-subsequently identified as Steve Turner-standing next to a machine looking at his cell phone. Detective Goodin approached, identified himself as a police officer, and asked if Turner had any weapons. Before the detective could perform a "stop and frisk,"[2] Turner voluntarily removed two pill bottles from his pocket.
Detective Goodin seized eight Suboxone strips, nine marijuana joints, and two amber pill bottles. One contained twenty-one Gabapentin (Neurontin ) pills. The other bottle contained Clonazepam (Klonipin) pills. Turner's Clonazepam and Gabapentin prescriptions had been filled that day. The Clonazepam bottle, according to its label, originally contained 90 pills, of which only twenty-six remained.
Detective Goodin also confiscated from Turner three syringes, rolling papers, $186 in cash, and Turner's cellphone. Forensic testing later confirmed that the text messages Detective Goodin had received came from Turner's phone.
The grand jury indicted Turner on five charges. The first count of the indictment was a felony charge, "Trafficking in a Controlled Substance in the Second Degree ... as a second or greater offense."[3] The *308 indictments on the second, third, and fourth counts were misdemeanor charges related to trafficking in, respectively, a controlled substance,[4] a legend drug,[5] and marijuana less than eight ounces.[6] The fifth count of the indictment charged Turner as a first-degree persistent felony offender (PFO), later amended to second-degree PFO.[7] In our analysis below, we will focus on the felony count and the PFO count.
The circuit court held a jury trial on December 10, 2015. Even though the felony indictment charged Turner's crime as a second or subsequent offense,[8] and in order to avoid prejudice, there was to be no mention that Turner was a subsequent offender during the guilt phase of the trial.[9] The jury found Turner guilty of all the misdemeanor counts and the felony count, as well. The court then bifurcated the penalty phase.
In the first part of the penalty phase, the Commonwealth presented evidence that Turner had a prior, second-degree trafficking conviction.[10] The jury was instructed to determine whether he was a subsequent offender of the statute. If not, the jury was to recommend sentencing for a first offense in the range authorized by KRS 218A.1413(2)(b) 1 of one to three years. On the other hand, if the jury determined Turner was, in fact, a subsequent offender, it was to recommend a sentence in the range authorized by KRS 218A.1413(2)(b) 2 of one to five years. The jury found that Turner had violated the statute before, making his conviction one for a second or subsequent offense. The jury then recommended the statutory maximum sentence under KRS 218A.1413(2)(b) 2 of five years.
In the second part of the penalty phase, the Commonwealth introduced evidence of two separate prior felony convictions to support the PFO charge. Following this part of the hearing, the jury found Turner guilty of being a second-degree PFO under the fifth count of the indictment. The jury recommended a sentence of ten years in lieu of the five-year sentence it recommended under KRS 218A.1413(2)(b) 2 on the first count. The ten-year sentence recommendation was the statutory maximum under the enhanced PFO range. See KRS 532.080(5) ; KRS 532.060(2)(c).
TURNER'S CLAIMS OF ERROR
Turner brings four claims of error to our attention. First, although he does not claim it was error to present proof that this was not the first time he violated KRS 218A.1413, nor error to impose a sentence under KRS 218A.1413(2)(b) 2, he does argue that enhancement under the PFO statute, *309 KRS 532.080(5), is prohibited by KRS 532.080(10).
Second, he asserts the Commonwealth failed to present sufficient evidence to prove his PFO status.
Third, he claims the jury's PFO verdict was non-unanimous in violation of the Kentucky constitution.
Fourth and finally, he argues the circuit court violated due process and established case law during the penalty phase by permitting improper evidence regarding Turner's prior convictions.
As to preservation of these errors, Turner claims he partially preserved the right of appellate review of the first argument.[11] However, he admits he failed to preserve for review any of his remaining arguments.
STANDARD OF REVIEW
This Court reviews unpreserved claims of error on direct appeal, such as Turner's last three claims, only for palpable error, and then only if "a request for palpable error review under RCr[12 ] 10.26 is made and briefed by the appellant." Webster v. Commonwealth , 438 S.W.3d 321, 325 (Ky. 2014). To prevail, one must show that the error resulted in "manifest injustice." RCr 10.26 provides:
A palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error. (Emphasis added).
The Supreme Court has stated:
Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial.
Graves v. Commonwealth , 17 S.W.3d 858, 864 (Ky. 2000) (citing Jackson v. Commonwealth , 717 S.W.2d 511, 513 (Ky. App. 1986) ). Turner has requested palpable error review and we shall apply that standard to his last three claims.
Turner's first claim of error challenges the propriety of his sentencing. We agree with him that "an appellate court is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial court." Jones v. Commonwealth , 382 S.W.3d 22, 27 (Ky. 2011). Consequently, "true 'sentencing issue[s]' ... cannot be waived by failure to object" and may be raised on appeal, even if for the first time. Roberts v. Commonwealth , 410 S.W.3d 606, 611 (Ky. 2013). We also agree with Turner that his is a true sentencing issue, and we shall address it notwithstanding any challenge to its preservation.
We will review his sentencing error claim first.
ANALYSIS
Turner argues the circuit court erred by permitting enhancement of his felony conviction on the basis of his status as a persistent felony offender. This, he claims, violates KRS 532.080(10). We disagree. Our analysis turns on the plain reading of the statute, and "the generally accepted understanding that language- *310 even statutory language-has meaning only in the context in which it [is] used." David K. Ismay, M. Anthony Brown, The Not So New Textualism: A Critique of John Manning's Second Generation Textualism , 31 J.L. & Pol. 187, 189 (2015).
On June 8, 2011, the General Assembly enacted House Bill 463 ("HB 463"), titled the Public Safety and Offender Accountability Act. HB 463 overhauled the Commonwealth's sentencing policies in order to "maintain public safety and hold offenders accountable while reducing recidivism and criminal behavior and improving outcomes for those offenders who are sentenced." KRS 532.007(1).
Section 26 of HB 463 added a new provision to the persistent felony sentencing statute, KRS 532.080, stating in pertinent part as follows:
[T]his section [requiring enhancement of a sentence when the defendant is a persistent felony offender] shall not apply to a person convicted of a criminal offense if the penalty for that offense was increased from a misdemeanor to a felony, or from a lower felony classification to a higher felony classification, because the conviction constituted a second or subsequent violation of that offense.
KRS 532.080(10)(a).
Giving all the words of the statute meaning and purpose, we conclude that, to claim the benefit of this provision, the following elements must be satisfied: (1) "the penalty for [the underlying] offense [must have been] increased"; (2) the shift in the penalty must be "from a misdemeanor to a felony, or from a lower felony classification to a higher felony classification"; and (3) the reason the penalty was shifted from one classification to another must be "because the conviction constituted a second or subsequent violation of that [same] offense" rather than, for example, possession of a greater quantity of drugs or theft of a greater value of property. Id.
Turner cannot establish the second element because he was convicted of violating KRS 218A.1413(1)(c). Subsection (2) of KRS 218A.1413 defines both the first violation and the second violation of subsection (1)(c) as Class D felonies. That is to say, in Turner's case the "penalty for that [second] offense was [not] increased ... from a lower felony classification to a higher felony classification [.]" KRS 532.080(10).
Nevertheless, Turner argues that his sentence was, indeed, "enhanced" from a maximum of three years under KRS 218A.1413(2)(b) 1 to a maximum of five years under KRS 218A.1413(2)(b) 2. As support, he repeats the successful advocate's argument in Jackson v. Commonwealth "that KRS 352.080(10) bars PFO enhancement of convictions-such as Jackson's first-degree trafficking [ KRS 218A.1412 ], second offense-where the available penalty range was increased as a result of it being a subsequent offense." 2014-SC-000506-MR, 2016 WL 2604841, at *7 (Ky. May 5, 2016) (reversing Jackson's conviction on other grounds). We cannot agree that this argument is sufficient under the statute because it omits that part of KRS 532.080(10) requiring the increase in penalty to be from a lower classification to a higher classification, which, in Jackson's case, it was. To adopt Turner's argument, however, we would have to redact a part of KRS 532.080(10). We simply lack such authority.
Considering the statutory language in context bolsters our confidence in the conclusion we reach. We first note that KRS 218A.1413(2)(b) 1 caps a maximum penalty, creating what, at oral argument in this case, Turner called a "baby D" sentence. In other words, the legislative scheme did not create a penalty enhancement from one *311 felony classification to another under KRS 218A.1413(2) -it eliminated one.
We also note that Turner is focusing on the differences in the maximum penalty between subsection (2)(b)1 and subsection (2)(b)2, ignoring the fact that there is no "enhancement" of the minimum sentence. Both have a minimum sentence of one year.
Furthermore, the amendments to KRS 532.080 and KRS 218A.1413 were not stand-alone measures, but part of a comprehensive legislative undertaking embracing many facets of our criminal law. Our examination of the evolution of these particular statutes convinces us that the legislature knew exactly what it was doing in the greater context of HB 463. This case demonstrates as much.
Turner was convicted of a crime identified in KRS 218A.1413(1). Under the old version of this statute, the penalty provision read:
(2) Any person who violates the provisions of subsection (1) of this section shall:
(a) For the first offense be guilty of a Class D felony.
(b) For a second or subsequent offense be guilty of a Class C felony.
KRS 218A.1413(2) (2010). Had Turner's second offense been measured by this old version, the increase in his penalty would have been "from a lower felony classification [Class D] to a higher felony classification [Class C,]" thereby satisfying the second element of KRS 532.080(10), and prohibiting the enhancement of his sentence as a persistent felony offender.
Fatal to Turner's argument, today, is the fact that HB 463 also amended KRS 218A.1413. Before the legislature crafted section 26 of HB 463 creating KRS 532.080(10), it crafted section 10 of the same bill, amending KRS 218A.1413(2). The impact of the amendment was primarily two-fold.
First, prior to the amendment, there was no need for the prosecutor to prove trafficking in any minimum amount to obtain a conviction under KRS 218A.1413(1)(a). In terms of statutory construction, Kentucky "followed the 'any amount' approach ... [such] that the quantity of the drug ... is immaterial." Commonwealth v. Shivley , 814 S.W.2d 572, 573 (Ky. 1991). HB 463 changed that with regard to KRS 218A.1413(1)(a). Since enactment of section 10 of HB 463, in order to convict a defendant under KRS 218A.1413(1)(a), the prosecutor must prove trafficking in a minimum amount of the designated controlled substance. "Graduated sanctions[,]" formerly set out in the old version of the statute as subsections (2)(a) and (2)(b), are now solely "supplied in KRS 218A.1413(2)(a) [so that] an offender [of subsection (1)(a) ] ... will be guilty of a Class D felony for the first offense, and then a Class C felony for the second and subsequent offenses." Commonwealth v. Gamble , 453 S.W.3d 716, 719 (Ky. 2015).
But by adding an element of proof (a minimum quantity of controlled substances) for a conviction under subsection (1)(a), the legislature had no intention of legalizing trafficking in controlled substances in lesser amounts. So, section 10 of HB 463 also created a new subsection, KRS 218A.1413(1)(c), which "prohibits offenders from trafficking in smaller amounts of controlled substances, e.g., nineteen or less hydrocodone pills." Gamble , 453 S.W.3d at 719. The next step in crafting the new legislation was to ascribe a penalty that would be consistent with the express legislative intent of HB 436. See KRS 532.007. That brings us to the second major impact resulting from amendment of KRS 218.1413-setting the penalty for *312 trafficking in these smaller amounts of controlled substances.
The legislature could have made violation of subsection (1)(c) a misdemeanor, but did not. Nor did the legislature classify a second offense of subsection (1)(c) a Class C felony as it did with subsection (1)(a).[13] Rather, subsection (2) of KRS 218A.1413 now "carves out an exception [to the one-to-five year penalty range of KRS 532.060(2)(d) ] for those first-time offenders [of KRS 218.1413(1)(c) ] by stating that '[a]ny person who violates the provisions of subsection (1)(c) of this section shall be guilty of [a] Class D felony for the first offense, except that ... the maximum sentence to be imposed shall be no greater than three (3) years.' " Gamble , 453 S.W.3d at 719. The penalty for a second offense remains a Class D felony with a penalty range from one to five years. KRS 218A.1413(2)(b) 2; KRS 532.080(5) ; KRS 532.060(2)(d).
As previously noted, amendment of KRS 218A.1413 eliminated the enhancement from a Class D to a Class C penalty for trafficking in smaller amounts (or, as in this case, unspecified amounts[14] ). It did not create an enhancement.
Finally, we have considered the consequences of adopting Turner's view and conclude the result would be an absurd interpretation of the statute. The Supreme Court has already held that a first offender of KRS 218A.1413(1)(c) who was also a persistent felony offender would be subject to a penalty for the underlying offense of one to three years and have that penalty lawfully enhanced to a sentence of five to ten years. Gamble , 453 S.W.3d at 721 ("we hold that KRS 218A.1413(2)(b)(1) does not prohibit [a first offender's] sentence from being enhanced to five [to ten] years imprisonment by virtue of his status as a PFO"). Adopting Turner's argument would mean a person committing a second offense of the statute who was also a persistent felony offender of KRS 218A.1413(1)(c) would receive a sentence on the underlying charge of one to five years that could not be enhanced despite his PFO status. This approach imposes a harsher sentence upon a person committing a first offense than upon a person committing a second offense when both persons are persistent felony offenders.[15]
*313 Not only does such an interpretation of the words of KRS 532.080(10) lack common sense in context, it would be inconsistent with legislative intent because, while it may not encourage recidivism, it is certain not to promote the statute's policy of "[r]eduction of recidivism and criminal behavior[.]" KRS 532.007(2).
We find no merit in Turner's argument for reversal on the ground that his sentence was enhanced in violation of KRS 532.080(10). We move on to Turner's second argument.
In his second argument, Turner claims there was no evidence to support the PFO conviction. We disagree.
Robin Williams, deputy clerk for the Bell Circuit Clerk's office, testified during both penalty phases. In the first phase, she presented evidence that Turner was convicted of a first offense, trafficking in a controlled substance. After being properly instructed, the jury deliberated and returned with a finding that the instant conviction was a second or subsequent offense under KRS 218A.1413(1)(c). The Commonwealth then recalled her to the stand to testify in the second penalty phase addressing Turner's PFO status.
Deputy Clerk Williams testified to 28 of Turner's prior convictions dating from February 1993 through May 2015. Specifically, she testified that on June 18, 2007, in Boyd Circuit Court, Case No. 05-CR-00207, Turner was convicted of a felony (possession or use of drug paraphernalia, second or greater offense) and sentenced to one year of imprisonment. Williams also testified that on the same date, in Boyd Circuit Court, Case No. 03-CR-00167, Turner was convicted of a second felony (first-degree promoting contraband) and sentenced to five years in prison. These convictions were incorporated into the PFO-charge jury instruction. If Turner ever had objections regarding that instruction, he waived them.
Furthermore, Brad Southerland, a probation and parole officer, testified that Turner was last discharged from parole on October 23, 2012, less than five years prior to May 29, 2015, the date Turner committed the felony in the instant case. Southerland confirmed Turner was twenty-one years of age or older when he committed the crimes.
The jury found Turner to be a second-degree PFO and recommended an enhanced sentence of ten years in prison. We previously found the penalty enhancement lawful; we now conclude that the evidence presented was sufficient to convince the jury beyond a reasonable doubt that Turner was a persistent felony offender. We find no error here; therefore, further palpable error analysis is unnecessary.
Turner's next argument turns on the fact that the PFO jury instruction identified alternative prior felony convictions as bases for convicting Turner under the fifth count, PFO. According to Turner, the prosecutor "encouraged some jurors to convict Turner of PFO status based on a *314 2003 prior crime and other jurors to do so based on a separate 2005 prior crime." (Appellant's brief, p. 15). Not knowing whether all the jurors based their decision on the same prior felony conviction, so goes his argument, means that the verdict cannot be unanimous. We do not agree.
Without further elucidation, Turner cites three cases in support of this conclusory statement. Martin v. Commonwealth , 456 S.W.3d 1 (Ky. 2015) ; Johnson v. Commonwealth , 405 S.W.3d 439 (Ky. 2013) ; Kingrey v. Commonwealth , 396 S.W.3d 824 (Ky. 2013). None perfectly fits these facts. More importantly, none persuades us that Turner's PFO conviction was not unanimous.
Turner's first cited case, Martin , gave the Supreme Court "an opportunity to explore each of the two archetypal unanimous-verdict violations. The first type of unanimous-verdict violation occurs when multiple counts of the same offense are adjudicated in a single trial." Martin , 456 S.W.3d at 6. Turner was not charged with multiple counts of being a persistent felony offender. The law regarding this type of unanimous verdict is inapplicable. Martin then noted that the Court had previously "clarified a second type of unanimous-verdict violation ... [i]n Johnson v. Commonwealth , " id. , which Turner also cites, and which also fails to support his argument.
In Johnson , the proof unfolded in such a way that a mother could have harmed her child not on one occasion, but on two. The single jury instruction was not specific enough to prevent the possibility that some jurors convicted her of abuse as to the first occasion and other jurors as to the second. The Court said:
A duplicitous count, whether appearing in an indictment or jury instructions, presents multiple constitutional problems, including that the jury verdict is not unanimous, which is the issue raised in this case. The courts have stated that two of the reasons for rejecting duplicitous indictments are that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or both and that there is no way of knowing ... whether the jury was unanimous with respect to either.
Johnson v. Commonwealth , 405 S.W.3d 439, 454 (Ky. 2013) (citations and internal quotation marks omitted). "[A] duplicitous count includes in a single count what must be charged in multiple counts." Ruiz v. Commonwealth , 471 S.W.3d 675, 680 (Ky. 2015) (citation and internal quotation marks omitted). Turner's case does not present a "duplicitous count" in that there is a single count for PFO second degree.
We do find guidance, however, in the third case Turner cites- Kingrey v. Commonwealth . But Turner may not be pleased we did. That case says:
The requirement of unanimity is satisfied if the evidence supported conviction under both theories. This is because, no matter which theory they accepted, all the jurors convicted under a theory supported by the evidence and all the jurors convicted the defendant of the same offense.
Kingrey v. Commonwealth , 396 S.W.3d 824, 830 (Ky. 2013) (citations and internal quotation marks omitted); see also Miller v. Commonwealth , 77 S.W.3d 566, 574 (Ky. 2002) ("We have held that a 'combination' instruction permitting a conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory.").
The instruction in Turner's case is of this last type. The prosecutor was correct in her closing statement that it did not matter whether any individual juror believed Turner had been convicted of a felony in the 2003 case or the 2005 case. Believing the proof of either prior conviction *315 (or as is more likely, believing both) was sufficient to sustain the PFO conviction.
We find no error here; therefore, further palpable error analysis is unnecessary.
Lastly, Turner argues the circuit court violated due process and established case law during the sentencing phase by permitting improper evidence regarding Turner's prior convictions. Specifically, he objects that the jury was presented with documentary evidence of a prior misdemeanor conviction for alcohol intoxication, and another for disorderly conduct, that "painted a very unflattering picture of Mr. Turner." (Appellant's brief, p. 16). One conviction referenced his "staggering walk" and "slurred speech" and the other indicated that he had been disorderly in his father's home and "act [ing] as if he was going to fight with officers" who had arrived.
We need not examine whether this was error. We will go so far as to presume, for purposes of this analysis only, that it was. It is far easier and obvious to conclude that it falls far short of clearing the relatively high hurdle of the palpable error standard. We cannot find manifest injustice under such circumstances for it is clear from our review of this record that there is no substantial possibility that the result would have been different had the jury not seen these documents. The error, if any, was non-prejudicial. There is no palpable error here.
CONCLUSION
For the foregoing reasons, we affirm the Bell Circuit Court's January 11, 2016 judgment and sentence.
ALL CONCUR.

Kentucky Revised Statutes.

See Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

KRS 218A.1413 ; related to the Suboxone (Buprenorphine), a schedule III narcotic. The amount of the drug in Turner's possession was never specified to the jury and the prosecution proceeded under KRS 218A.1413(1)(c), applicable to "any quantity of a controlled substance[.]"

KRS 218A.1414 ; related to the Clonazepam, a schedule IV non-narcotic.

KRS 217.182 ; related to the Gabapentin, a non-controlled substance.

KRS 218A.1421(2)(a).

KRS 532.080(2).

As noted, the indictment itself charged the crime as a second offense. However, references in the record thereafter and until the penalty phase when Turner's recidivism was an issue, the record makes no reference to the fact that this was Turner's second time offending the statute.

This is the same procedure followed by the circuit court, noted as correct by the Supreme Court, in Jackson v. Commonwealth , 2014-SC-000506-MR, 2016 WL 2604841, at *5 (Ky. May 5, 2016).

On June 20, 2012, Turner was convicted of Trafficking in a Controlled Substance (KRS 218A.1413 ).

Before voir dire , counsel for Turner informed the circuit court, "my client noted he should not be subject to PFO I." The Commonwealth objected on grounds that they were "not there yet" and the circuit court said it would "reserve" on the issue. Turner did not renew the objection, and the circuit court never ruled on it.

Kentucky Rules of Criminal Procedure.

HB 463 also retained the same graduated penalties for violations of KRS 218A.1413(1)(b) as for violation of KRS 218A.1413(1)(a).

Failing to specify the amount of drugs allegedly trafficked during the guilt phase of trial can mean that the penalty for a conviction for trafficking, second degree, is limited to that available under KRS 218A.1413(1)(c). Owens v. Commonwealth , 2015-SC-000292-MR, 2016 WL 7665878, at *6 (Ky. Dec. 15, 2016) (reversing a conviction under KRS 218A.1413(1)(a) when the prosecutor failed to prove any amount; "Owens can be sentenced under KRS 218A.1413(2)(a) only if the jury first finds that he trafficked in the quantity specified in KRS 218A.1413(1)(a).... the most basic version of trafficking under this statute is subject to a sentence of only one to three years in prison. To find a defendant guilty of that offense, the jury must find that the person unlawfully trafficked in a quantity of hydrocodone.").

The Supreme Court has suggested that a prosecutor might "ma[k]e a conscious election to treat [the defendant] as a first-time offender" rather than a second or subsequent offender "to preserve its ability to pursue PFO charges[.]" Forte v. Commonwealth , 2014-SC-000726-MR, 2016 WL 4488309, at *4 n.2 (Ky. Aug. 25, 2016) (addressing penalty phase errors involving KRS 218A.1412, not KRS 218A.1413 ). That does not appear to be the case here. Avoiding reference to the fact that Turner had committed this crime once previously lessened the possibility of prejudicing the jury regarding the current charge. Further, not only does Forte not address KRS 218A.1413(1)(c), this language is certainly dicta. More significantly, despite being rendered by the Supreme Court, Forte is not precedent. CR 76.28(4)(c). For unknown reasons, the Supreme Court chose not to publish Forte , or Jackson , or Owens. Consequently, we are free to allow these cases as much or as little persuasive value as we choose. Still, we cite them, and distinguish them as necessary, to assure the bar of a jurisprudential consistency that transcends the published/unpublished distinction. "While unpublished opinions may, by rule or tradition, lack the precedential authority accorded published decisions, unless the issuing courts have simply ruled incorrectly, these opinions should be considered correct in their expressions of law or application of law to facts." J. Thomas Sullivan, Unpublished Opinions and No Citation Rules in the Trial Courts , 47 Ariz. L. Rev. 419, 445 (2005). Perhaps that is why our legislature suggested, apparently by application of comity, that "[a]ll opinions of the Supreme Court shall be published." KRS 21A.070(1).