RENDERED: APRIL 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1092-ME

MATTHEW EVANS                 APPELLANT


v.            APPEAL FROM BULLITT FAMILY COURT
HONORABLE MONICA K. MEREDITH, JUDGE
ACTION NO. 25-D-00187-001


GENEVRA EVANS               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND EASTON, JUDGES.

EASTON, JUDGE: Appellant, Matthew Evans (Matthew) appeals from the Bullitt Family Court's issuance of a Domestic Violence Order (DVO) against him on behalf of the Appellee, Genevra Evans (Genevra). Matthew argues the family court erred because there was no evidence of a qualifying act or threat, and the court's findings were unsupported by substantial evidence. He further argues the family court considered improper testimony and denied him Due Process,

including an adequate opportunity to be heard. Having carefully reviewed the record, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The parties were married at the time of the DVO hearing. They have an adult daughter (Myra), who then resided in a separate building on her parents' property. She lived there with her boyfriend, Justin Willett (Justin). In May of 2025, Genevra filed a Petition for Order of Protection pursuant to KRS[1] Chapter 403. She alleged Matthew had been making threats, both in person and by text messages, of personal violence, property damage, death, and harming pets. She believed this behavior had been escalating over the prior 30-60 days, and she was in fear for her life and the lives of Myra and Justin. Genevra believed Matthew was becoming more mentally unstable, and she was afraid of his reaction when he learned of her filing for divorce.

In July of 2025, both parties appeared with their respective counsel for an evidentiary hearing. The family court heard testimony from Genevra and Myra. Matthew did not testify or call any witnesses on his behalf.

Genevra testified the parties separated on May 18, 2025. She adopted her written complaint as her testimony. In addition, she testified that, over the last couple of months, Matthew had made threats to Myra and others and had become

---

[1] Kentucky Revised Statutes.

volatile and unpredictable. For example, Matthew threatened to cut Justin into small pieces and explained to Genevra that he would put the pieces in the home by the dining table.

Genevra confirmed her concern that Matthew's behavior had been escalating over a short period of time. He had been volatile, rageful, impulsive, and she no longer knew what he was capable of doing. Matthew caused her to fear for her own safety and the safety of others. She believed she was in physical danger, and that fear was increasing due to the recent filing for a divorce. Genevra admitted Matthew had made no specific threats of physical harm against her, but she was still concerned about the way he had been plotting an attack on Justin. This behavior was different from his prior expressions of dislike toward Justin.

Myra testified she resided on the same property as her parents, but she and Justin lived in a different building. She had witnessed Matthew lose his temper and act aggressively. One afternoon in May 2025, she went to her parents' house to discuss working in a dog area in the back yard. This angered her father. Matthew stated he was going to "burn the f***ing place to the ground."

Also in May 2025, Matthew threatened to shoot Justin. On another occasion, Matthew told Myra that, if Justin "pissed him off," he would just kill him and dissolve him in a blue barrel full of lime. Later, Matthew showed Myra a picture on the internet of such a blue barrel. He stated he could also just get pigs to

eat Justin's body. Myra testified that, while she was living in Maine several years ago as a Senior in high school, Matthew had threatened to kill her.

The family court granted the DVO, finding Genevra had established that Matthew had engaged in a pattern of conduct that is intimidating and threatening in nature and caused her to have reasonable fear for her safety. The family court included both Myra and Justin in the DVO as protected persons. Matthew then filed this timely appeal.

## STANDARD OF REVIEW

A review of a trial court's decision regarding an entry of an order of protection is limited to "whether the findings of the trial judge were clearly erroneous or that [s]he abused [her] discretion." *Caudill v. Caudill*, 318 S.W.3d 112, 114-15 (Ky. App. 2010) (internal quotation marks omitted). Rulings upon admissibility of evidence are within the discretion of the trial judge, and we will not reverse absent a clear abuse of discretion. *Kentucky Guardianship Administrators, LLC v. Baptist Healthcare Sys., Inc.*, 635 S.W.3d 14, 20 (Ky. 2021) (citation omitted). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018) (citation omitted). A trial court's findings of fact are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## BRIEF NON-COMPLIANCE

Before we turn to the arguments, we must first address the deficiencies in Matthew's *pro se* Appellant Brief. Kentucky Rules of Appellate Procedure (RAP) 32(A)(3) requires that a brief contain "[a] statement of the case consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal, *with ample references to the specific location in the record supporting each of the statements contained in the summary*." (Emphasis added.) Moreover, RAP 32(A)(4) provides:

> An argument conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

Matthew's Statement of the Case contains no references to the record. In addition, Matthew's brief lacks any preservation statement indicating that his issues on appeal are preserved and in what manner they were preserved as required by RAP 32(A)(4). As noted in *Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023):

> The purpose of the preservation statement rule is to assure the reviewing court that the issue was properly presented to the trial court, and therefore, is appropriate for . . . consideration. While this procedural rule preserves judicial resources, it also serves an important substantive purpose: the fact and manner of preservation

> generally determines the applicable standard of review. Furthermore, it is neither the function nor the responsibility [of an appellate court] to scour the record to ensure an issue has been properly preserved for appellate review.

(Internal quotation marks and citations omitted.)  Moreover, *each* argument should have its own statement of preservation.  Here, Matthew's numerous arguments contain none.

"Our briefing rules are not arbitrary hoops to jump through.  Their aim is to facilitate our review.  We require preservation statements so we can verify our jurisdiction.  We require references to the record so we can understand, locate, and review the basis for a party's factual representations.  We require citations to authority, and that those citations be particularly formatted, so we can easily locate and review those authorities a party is relying on." *Snyder v. Snyder*, No. 2024-CA-1301-ME, 2025 WL 2176842, at *2 (Ky. App. Aug. 1, 2025).[2]

But our appellate courts have shown leniency to noncompliance when a party is *pro se*.  Even so, *pro se* litigants must demonstrate a "good faith attempt to comport" with the requirements of RAP.  *See Hallis v. Hallis*, 328 S.W.3d 694,

---

[2] We recognize that citation of unpublished opinions by parties is "disfavored" and that there is no provision specifically addressing when the courts may cite their own unpublished opinions. RAP 41.  But "we are free to allow these cases as much or as little persuasive value as we choose.  Still, we cite them, and distinguish them as necessary, to assure the bar of a jurisprudential consistency that transcends the published/unpublished distinction." *Turner v. Commonwealth*, 538 S.W.3d 305, 312 n.15 (Ky. App. 2017).  In this instance, we cite to this unpublished opinion for its clear statement of the importance of our briefing rules.

697-98 (Ky. App. 2010). In this case, it is difficult to find such an attempt. Not only did Matthew fail to include preservation statements for his arguments, and fail to make any references to the record, he also falsely stated in his Statement of Facts that "no transcript or recording of the DVO hearing is available[.]" Matthew also failed to file a Reply Brief in which he might have corrected these errors.

Pursuant to RAP 10(B):

[T]he failure of a party to substantially comply with the rules is ground for such action as the appellate court deems appropriate, which may include:

(1) A deficiency notice or order directing a party to take specific action,

(2) A show cause order,

(3) Striking of filings, briefs, record or portions thereof,

(4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,

(5) A dismissal of the appeal or denial of the motion for discretionary review, and

(6) Such further remedies as are specified in any applicable rule.

We would be justified if we struck Matthew's brief and dismissed this appeal on that basis. Yet we recognize that it is important to review decisions about domestic violence, which often involve *pro se* parties, to assure the parties and the public that these difficult decisions with serious consequences have been

properly made. Typically, the record in such cases is not voluminous. It is usually not difficult to find how the objection was preserved and to review the evidence. With these considerations, we elect to overlook these deficiencies and proceed with our review in this case. But we caution that tolerance for Matthew's RAP violations here should not be taken as precedent to repeat such non-compliance by other litigants. There have been and will be situations in which a panel of this Court will dismiss appeals for substantial non-compliance with RAP.

## ANALYSIS

Matthew appears to raise several issues on appeal. First, he argues there was no evidence of a qualifying act or threat under KRS Chapter 403 to support the DVO. He also argues the family court findings are unsupported by substantial evidence and based on improper testimony. Finally, Matthew argues he was denied Due Process because he did not have an adequate opportunity to be heard. We disagree with each of these contentions for reasons set forth below.

Matthew admits that Kentucky law does not require physical injury to support issuance of a DVO, yet he argues it does require evidence of conduct that falls within the statutory definition of "domestic violence and abuse." He maintains no such qualifying threat was shown in this case.

But domestic violence and abuse are defined in KRS 403.720(2)(a) as:

(a) Physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, *or the infliction of*

-8-

> *fear of imminent physical injury*, serious physical injury,
> sexual abuse, strangulation, or assault between family
> members or members of an unmarried couple[.]
>
> KRS 403.720(3) defines "Family member" as:
>
> a spouse, including a former spouse, a grandparent, a
> grandchild, a parent, an adult sibling, a child, a stepchild,
> *or any other person living in the same household as a*
> *child if the child is the alleged victim*[.]

(Emphasis added.)

The family court found that Matthew made direct comments in front of Genevra, which she considered an escalation in his previous disturbing behavior, in which he identified a plan of how to kill Justin, who also lived on the same property with Genevra and her daughter. Matthew threatened to cut Justin into small pieces and put him in a blue barrel of lime or feed him to pigs. Within the same time period, Matthew told Myra he was going to shoot her boyfriend and "burn the f***ing place to the ground" in reference to the parties' residence. Myra shared these comments with Genevra because she was in fear for all their lives.

Genevra described Matthew as volatile, rageful, and impulsive and stated she did not know what he was capable of doing. Genevra testified she believes she is in physical danger of Matthew and that fear is increasing due to filing of the parties' divorce action.

The family court determined that the evidence established Matthew had engaged in a pattern of conduct that is intimidating and threatening in nature

-9-

and caused Genevra to have reasonable fear for her safety. Indeed, both Genevra and Myra were visibly shaken during the hearing and showed palpable fear of what Matthew might do to them or Justin. The family court correctly concluded that it was unnecessary to find actual physical violence to find that an act of domestic violence has occurred to sustain issuance of a DVO.

We find no abuse of discretion in the family court's findings of a qualifying act or threat under KRS Chapter 403. Repeated and specific death threats against other members of the household, threats of arson, and impulsive rage towards Genevra qualify as a "threat which inflicts fear of imminent physical injury" under KRS 403.720(2)(a), and those threats were directed towards family members as defined by KRS 403.720(3).

Matthew next argues the family court findings are unsupported by substantial evidence and based on improper testimony. Specifically, Matthew challenges the relevance of testimony concerning some threats he made toward Justin and Myra as too remote and geographically disconnected to establish imminent risk to Genevra.

The family court summarized Myra's testimony as including Matthew's threatening to kill her while the family was living in Maine her Senior year of high school. The family court's findings do not indicate undue reliance on this testimony as a prior incident of threatened violence. Rather, the family court's

findings were based on more recent statements made to Genevra and Myra about violence toward Justin. And we disagree that evidence of death threats towards Justin, who is essentially a resident of Genevra's household property, is too disconnected from Genevra to establish her fear of imminent harm.

KRS 403.740(1) requires the trial court to find by a preponderance of the evidence that domestic violence has occurred and is likely to occur again. "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn*, 546 S.W.3d at 580. Domestic violence and abuse occur by inflicting fear of imminent physical injury. KRS 403.720(2)(a). This fear was inflicted multiple times by Matthew.

Further, there was other additional evidence to support the DVO. The statements from the petition adopted as testimony, in conjunction with the further testimony of both Genevra and Myra, constitute evidence of domestic violence under KRS 403.720. Multiple unprovoked threats established a pattern of intimidation and escalation sufficient to support the DVO. In this case, substantial evidence supports the family court's finding that Matthew inflicted fear of imminent physical injury. There is no requirement for Genevra to wait and see if Matthew physically carries out his repeated threats before seeking protection from the courts. To prevent such escalations is precisely why the DVO process exists.

-11-

We reject Matthew's contention that the family court failed to properly rely on exculpatory testimony that he had never hit or hurt Genevra or Myra. Matthew argues the family court made no reference to this testimony and its findings reflect a selective consideration of the record. Again, no physical injury is required for behavior to satisfy the definition of domestic violence and abuse. The repeated infliction of fear of such physical injury suffices.

The family court was in the best position to judge the credibility of the witnesses and weigh the evidence presented. *See Williford v. Williford*, 583 S.W.3d 424, 429 (Ky. App. 2019) (citation omitted). While there was no evidence Genevra suffered physical injury or assault perpetrated by Matthew, there was substantial evidence to support a finding that Matthew inflicted fear of imminent physical injury.

When reviewing a decision on a DVO petition, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted). Here, the trial court's findings are supported by substantial evidence and there was no abuse of discretion.

Finally, Matthew argues he was denied Due Process because the family court never asked him "whether he wished to testify, never advised him of

-12-

the significance of declining testimony, and never obtained a knowing waiver on the record." "Due process requires an evidentiary hearing and a meaningful opportunity to be heard prior to the entry of a DVO." *Cottrell v. Cottrell*, 571 S.W.3d 590, 592 (Ky. App. 2019) (citation omitted). "[A] party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015).

Here, the parties were afforded a complete evidentiary hearing where Matthew was represented by counsel and engaged in cross-examination of both Genevra and Myra. The family court provided Matthew with the opportunity to call witnesses and thus testify for himself. After briefly conferring with counsel, Matthew's counsel informed the family court he would not be calling anyone to testify. Matthew was afforded Due Process and an opportunity to be heard.

Matthew insists he was denied a "real opportunity to be heard" because the courtroom audio made it difficult to understand and communicate with Genevra's attorney on Zoom. Matthew states in his brief that no transcript or recording of the DVO hearing is available. This statement is incorrect. We have reviewed the DVO hearing and determined that any problems regarding audio failures was properly resolved by the family court.

Matthew's attorney advised it was difficult to hear Genevra's attorney on Zoom. The family court provided earphones to both Matthew and his attorney. After that, the evidentiary hearing proceeded without further complaint. We reject Matthew's contention that the family court did not resolve the problem and erred by failing to make findings that the parties could hear and understand the proceedings. Our review of the DVO hearing indicates Matthew's attorney engaged with Genevra's attorney, responding to objections and arguments, without any indication he was unable to hear or understand counsel's statements and without advising the family court the audio defects remained unresolved.

Matthew's Due Process claim appears to include a complaint that the presiding judge was inattentive because she once misidentified a witness by name is without merit. This Court has reviewed the full DVO hearing and found the presiding judge to be both thorough and alert to the evidence presented.

## CONCLUSION

The Bullitt Family Court's findings of fact are supported by the evidence and are not clearly erroneous. The Bullitt Family Court acted within its discretion. For the foregoing reasons, we affirm the DVO issued by the Bullitt Family Court.


ALL CONCUR.

-14-

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Matthew W. Evans, *pro se*               Amber L. Cook
Palermo, Maine                           Shepherdsville, Kentucky