OPINION OF THE COURT BY JUSTICE VENTERS
Appellant, Nery Ruiz, appeals from a judgment of the Christian Circuit Court convicting him of first-degree sexual abuse and first-degree sodomy. As grounds for relief Appellant contends that (1) flawed jury instructions and a duplicitous indictment violated his right to a unanimous verdict; and (2) the Commonwealth improperly elicited testimony from a police officer which impermissibly bolstered the credibility of the victim.
Because the instructions given in this case denied Appellant his constitutional right to a unanimous verdict, we vacate the judgment and remand for a new trial. Because the bolstering issue may arise upon retrial, we also address that issue on the merits.
I. FACTUAL AND PROCEDURAL BACKGROUND
Appellant is the stepfather of “Linda,”[1] who was six years old during the relevant *677 time frame of July 1, 2012, to November 25, 2012. During that time, Linda’s mother, who is Appellant’s wife, was deployed overseas with her Army unit. Linda and her younger sister resided with Appellant, their grandmother, and their fifteen-year old aunt. On November 28, 2012, Linda told her grandmother and aunt that Appellant had, on several occasions, subjected her to various forms of sexual contact. Linda’s grandmother and aunt took her to be examined at a nearby Army hospital. At the hospital, they met with police officers Mike Havens and Ben Walden of the Oak Grove (Kentucky) Police Department.
Based upon Linda’s allegations, Appellant was indicted on three counts of sexual abuse (KRS 510.110) and three counts of first-degree sodomy (KRS 510.070). At trial, Linda testified that on many occasions within the five-month period, Appellant took her into his bedroom and subjected her to various forms of sexual contact, including anal sodomy, forcing her to perform oral sodomy on him, and forcing her to touch his penis. Officer Havens testified about the demeanor of Linda and her family when he met them at the hospital. Appellant testified at the trial and denied all of the allegations. He suggested that his mother-in-law (Linda’s grandmother) disliked him, and for that reason she coached Linda to make the allegations.
At the conclusion of the evidence, the trial court submitted instructions to the jury on one count of first-degree sexual abuse for forcing Linda to touch his penis, one count of sodomy for penetrating Linda anally, and one count of sodomy for having Linda perform oral sodomy on him. The jury acquitted Appellant of anal sodomy, but convicted him of the other two crimes. Consistent with the jury’s recommendation, Appellant was sentenced to imprisonment for twenty years. This appeal followed.
II. UNANIMOUS VERDICT/“DUPLICITOUS INDICTMENT” ISSUES
Appellant contends that the jury instructions given in the case deprived him of the constitutional right to the verdict of a unanimous jury, and, further, that both counts of the indictment were “duplicitous” because they each charged a single crime out of numerous indistinguishable allegations, leaving him with “no adequate notice of the charges that he needed to defend himself against.” He also contends for the same reason that the jury instructions, which mirrored the charges of the indictment, were duplicitous. Appellant concedes that these issues are not preserved but requests that we undertake review under the manifest injustice standard contained in RCr 10.26.[2]

A. Unanimous Verdict

The two jury instructions under which Appellant was convicted stated as follows: ■
Instruction No. 5 [first-degree sexual abuse]
You will find the Defendant guilty of First Degree Sexual Abuse under this instruction if and only if, you believe from the evidence beyond a reasonable doubt all of the following:
A. That in this county on or between July 1, 2012, and November 25, 2012 and *678 before the finding of the indictment herein, he subjected the victim to sexual contact involving the victim’s hand on his penis and the victim touching his penis with her hand;
AND
B. That at the time of such conduct the victim was less than'12 years of age.
Instruction No. 6 [first-degree sodomy]
You will find the Defendant guilty of First Degree Sodomy under this instruction if and only if, you believe from the evidence beyond a reasonable doubt all of the following:
A. That in this county on or between July 1, 2012, and November 25, 2012 ahd before' the finding of the indictment herein, he engaged in deviate sexual intercourse involving her mouth on his penis.
AND
B. That at the time of such conduct the victim was less than 12 years of age.
Significantly, as the crimes are phrased in these instructions, the jury is not. directed to consider a specific, uniquely identifiable event (such as, at a particular place or time, near a notable date, while wearing particular clothing, or while attending a particular birthday or other such e^ent, etc.). Instead, the instructions, without any other particularized distinction, broadly refer to the five month period of July 1, 2012, and November 25, 2012. Such phrasing poses no problem when the evidence itself relates only to a single, unám-biguous occurrence; but when the evidence equally suggests the commission of two or more similar crimes; the potential for unanimous verdict problems arise]
Citing to. our recent case Johnson v. Commonwealth, 405 S.W.3d 439 (Ky.2013), Appellant contends that his constitutional right to a unanimous verdict was violated because at trial, the victim testified to multiple indistinguishable instances of sexual abuse and multiple indistinguishable instances of- sodomy as having occurred during the relevant time period, and so there is no assurance that each of the jurors were focused upon the same occurrence when they cast their respective guilty votes.
“Section 7 of the Kentucky Constitution requires a unanimous verdict.” Wells v. Commonwealth, 561 S.W.2d 85, 87 (Ky.1978). A violation of this provision may occur in several ways; however, as relevant here and as we explained in Johnson, a general jury verdict based upon a single instruction convicting a criminal defendant of a crime when two or more separate instances of that single crime were presented at trial violates the requirement of a unanimous verdict. 405 S.W.3d, at 449. In Johnson, the victim suffered two bone fractures at different times, either of which could have supported a conviction of first-degree, criminal abuse. The defendant in Johnson was convicted of criminal abuse under a single crime instruction. We held that a unanimous verdict violation occurred because it was entirely possible that some jurors voted for a guilty verdict based upon one fracture, while other jurors voted for a guilty verdict upon the other. The clear import of Johnson is that a verdict is not unanimous unless all of the jurors based their conviction of the defendant on the same criminal act; and that the instructions and verdict forms must be couched in language that eliminates any ambiguity regarding the jury’s consensus.
Here, as Appellant contends, the rule of Johnson was violated. As in many cases of child sex abuse, Linda was the only eyewitness- to the crimes charged against Appellant. Although his brief is conspicuously deficient in providing precise citations to *679 Linda’s testimony, our review of her one hour and forty-one minutes of testimony bears out Appellant’s claim. .
Linda testified that Appellant fondled her many times, and on multiple occasions forced her to perform oral and anal sex. In its examination of Linda, the Commonwealth did not have her isolate and identify any individual episode of sexual'abuse or sodomy that would relate the specific crime to the instructions to be given to the jury. Instead, her testimony described a generalized, nonspecific and undifferentiated continuing course of conduct of sexual misconduct perpetrated by Appellant using descriptions- such as: “sometimes he would make me touch his front[3] and would-make me suck on it sometimes”; “sometimes I would be watching TV”; “it would normally happen after I got back from school”; “sometimes he would call me to go in there becáuse he was going to do all that stuff to me”; when he had me get under the covers he “would just tell me to suck on his front”; when Appellant would have her suck his front it would be in the bedroom; and that this conduct would occur “two or three times per week.”
Consequently, the instructions were prepared on these two charges with no distinguishing descriptions that would fairly apprise the jury of exactly which criminal episode it was charged to consider. Without an instruction to channel the jury’s deliberation, the jury was left to adjudicate guilt on any or all of the vaguely alleged incidents, resulting in a verdict of doubtful unanimity, We are unable to distinguish what occurred in this case from the situation in Johnson. Indeed, the violation here is even more apparent, because as the number of indistinguishable criminal events described in the evidence increases, from two as in Johnson, to the non-specific “many” times and “2 or 3 times a week” for a five-month period that we see in this case, the probability that all jurors agreed on the same event substantially declines. Upon application of Johnson and cases preceding it, we are constrained to conclude that Appellant’s right to a unanimous verdict was violated.
It is worth noting that the Kentucky Penal Code, KRS Chapters 500-534, does not criminalize serial acts of sex abuse or sodomy as a “course of conduct” crime, such that a similar series of indistinguishable criminal acts would be deeméd to constitute the commission of. a single crime, and could then, be prosecuted as such. As suggested by Justice Abramson in her comment below, the General Assembly could enact such a crime; however, until it does, prosecutors must charge and prove sex crimés as specific, individual acts of criminal behavior.
Having concluded that Appellant’s conviction is tainted by unpreserved error, we must consider whether the error was palpable under CR 10.26, so as to compel relief despite his failure to bring the error to the attention of the trial court. When confronted with the same question in Johnson, we said:
This Court concludes that this type of error, which violates a defendant’s right to a unanimous verdict and also touches on the right to due process, is a fundamental error that is jurisprudentially intolerable. For that reason, the error in this case was palpable and requires reversal of Appellant’s criminal-abuse conviction.
Johnson, 405 S.W.3d at 457. Accordingly, we must regard the error as jurispruden-tially intolerable. We reverse the judgment and remand the matter for a new trial.

*680
B. Duplicitous Indictment

Appellant contends that the indictment handed down in this case was duplicitous because it combined multiple separate acts of sexual misconduct into a single description. A duplicitous indictment is “the joining in a single count of two or more distinct and separate offenses.” Johnson at 453 (quoting United States v. Starks, 515 F.2d 112, 116 (3d Cir.1975)). “In other words, a duplicitous count includes in a single count what must be charged in multiple counts.” Id.
The indictment in this case stated:
THE GRAND JURY CHARGES:
1-3 On or between July 1st, 2012, and November 25th, 2012, in Christian County, Kentucky, the above named Defendant committed the offense of Sexual Abuse, First-Degree, victim under 12 years of Age, 3 Counts, by making sexual contact on at least three (3) separate occasions with N.C., a minor under the age of twelve[J
In the same manner, a second paragraph lumps together counts “4-6,” purporting to charge three indistinguishable acts of first-degree sodomy in the same time frame.
While we do not endorse the manner in which the indictment is drafted, we need not determine if it is duplicitous or otherwise in violation of the provisions of RCr 6.10 and RCr 6.18 requiring a “separate count for each offense.” Appellant never raised the issue in the trial court. A defendant is deemed to have “waived any defects in his indictment by not bringing those defects to the attention of the trial judge.” Thomas v. Commonwealth, 931 S.W.2d 446, 450 (Ky. 1996). See RCr 8.18(1) (“[T]he following shall be raised before trial:... b) a motion alleging a defect in the indictment or information[.]”)
A bill of particulars pursuant to RCr 6.22 could have cured any flaw in the indictment by providing the essential details. Appellant never requested a bill of particulars. ‘If the defendant is not sufficiently informed by the indictment, an adequate remedy is at his disposal [under RCr 6.22], and if he chooses not to avail himself of it he will be considered as having waived the defect.’ Strong v. Commonwealth, 507 S.W.2d 691, 694 (Ky. 1974).
III. EVIDENTIARY ISSUES: THE MISNOMER OF “INVESTIGATIVE HEARSAY;” BOLSTERING/VOUCHING; AND OPINION TESTIMONY ON PROBABLE CAUSE
Appellant also cited as error testimony of Officer Havens, which Appellant contends was improper “investigative hearsay,” and which, in turn, impermissibly bolstered the allegations and credibility of the victim. He also cites as error Officer Havens’ testimony that “there was probable cause to file a report.” Because these matters may recur upon retrial, we address them on the merits.
A. Out of court statements to Officer Havens; so-called “investigative hearsay”
The trial court granted Appellant’s pretrial motion to prevent the Commonwealth from eliciting “investigative hearsay” from any of its witnesses. Despite the order, Appellant complains on appeal that the Commonwealth’s first witness was permitted to introduce improper “investigative hearsay.” Lest our repetition of the term “investigative hearsay” be misconstrued, we state here without equivocation: there is no such thing in our jurisprudence as “investigative hearsay.” There is no special rule of evidence known as “investiga *681 tive hearsay.” The term simply, is not a part of the evidentiary lexicon.
Despite our condemnation in Sanborn v. Commonwealth, 754 S.W.2d 534, 541 (Ky. 1988) (overruled on other grounds by Hudson v. Commonwealth, 202 S.W.3d 17, 22 (Ky.2006)), of what has been termed the “investigative hearsay” rule, it is still invoked on occasion. Perhaps we have failed in our decisions to vanquish it with sufficient vigor to send the message. We said in Sanborn, “Prosecutors should, once and for all, abandon the term ‘investigative hearsay as a misnomer, an oxymoron.” We now extend that suggestion to all of the bench and bar.
The use of the term exposes a fundamental misconception about the nature of the evidence it purports to. describe; what it purports to describe is far more effectively, and more precisely, explained by the basic definition of hearsay itself and the conventional rules of evidence pertaining to hearsay. The term, “investigative hearsay” creates the false impression that there is a special or unique Species of hearsay evidence that abides by its own rules removed from the rigors of ordinary hearsay law. Using this inartful term serves only to muddle the analysis of issue at hand and to distort the language by which hearsay issues must be resolved.
In its most common application, the term “investigative hearsay” is tagged to an out-of-court statement made to, or in the presence of, a police officer, such that it tends to explain subsequent investigative action taken by the police as a result of the statement. See Gordon v. Commonwealth, 916 S.W.2d 176, 179 (Ky.1995); and Young v. Commonwealth, 50 S.W.3d 148,167 (Ky. 2001). We said recently in McDaniel v. Commonwealth: “ ‘[I]nvestigative hearsay’ is a ‘misnomer ... derived from an attempt to create a hearsay exception permitting law enforcement officers to testify to the results of their investigations.’ This erroneous basis for the admission of hearsay evidence was rejected in a line of cases beginning with Sanborn [ ].” 415 S.W.3d 643, 652 (Ky.2013) (citations omitted).
To be clear, there is no special rule regarding out-of-court statements made to police officers investigating crimes. Nor do we need such a special rule. The conventional rules of evidence and the traditional evidentiary vocabulary are perfectly suited to describe the legal concept at hand. “Hearsay” is “a statement, other than one made by the declarant while testifying at the trial [ ], offered in evidence to prove the-truth of the matter asserted.” KRE 801(c). “Hearsay is not admissible except as provided by [the Rules of Evidence] or by rules of the Supreme Court of Kentucky.” KRE 802. The principal exceptions to the hearsay rule are found in KRE 801A, KRE 803, and KRE 804. There is no exception particularly dealing with statements made to police officers.
An out-of-court statement made to a police officer is judged by the same rules.of evidence that govern any out-of-court statement by any out-of-court declar-ant. If it is relevant and probative only to prove the truth of the matter asserted by the out-of-court declarant, then the statement is hearsay, and its admission into evidence is governed by the traditional hearsay. rule. And, as any other statement, if the .out-of-court statement made to a police officer has relevance and probative value that is not dependent upon its truthfulness, and it is not offered into evidence as proof of the matter asserted, then by definition the evidence is not hearsay.
For example, we held in Daniel v. Commonwealth that a police officer’s testimony that he had been .told by a woman that the defendant had raped her, and that, as a result of her statement, he took the woman *682 into protective custody, was inadmissible hearsay because its only relevance was to prove the fact of the rape; that the officer acted upon the statement to protect the woman was not relevant to any issue in the case. 905 S.W.2d 76, 79 (Ky.1995). Similarly, in Young v. Commonwealth, we held that because “[t]he only purpose for introducing the details of [the out-of-court statement to a police officer] would be to prove that Combs’s description did not fit Thomas; thus, it would have been offered to prove the truth of Combs’s description and, thus, that Thomas was not the killer.” 50 S.W.3d 148,167 (Ky.2001).
Correspondingly, when the reason that a witness has taken certain actions is an issue in the case, an out-of-court statement that tends to explain that action would not be _ hearsay because it is not offered “to .prove the truth of .the matter asserted.” Rather, it is offered to explain the action that was taken and has relevance regardless of whether the statement was true or false. See Id. at 167 (“If so, the out-of-court statement is not hearsay, because it is not offered to prove the truth of the matter asserted but -to explain why the officer acted as he did.”). It matters not whether the witness was a pólice officer; the same rhles applies.-
In such circumstances, because the out-of-court statement would not be subject to the hearsay rule, its admissibility would be determined by application of other rules of evidence.[4] So-called “investigative hearsay” is still, fundamentally, hearsay. Chestnut v. Commonwealth, 250 S.W.3d 288, 294 (Ky.2008). There is no special kind of evidence known as “investigative hearsay;” we have no rule of evidence called the “investigative hearsay rule.” Use of the term imparts no meaningful information to the analysis that is not otherwise supplied by the word “hearsay.”
Of further difficulty in the review of the “hearsay” issue raised by Appellant, is that he does not identify with any specificity a single instance where Officer Havens offered into evidence an out-of-court statement that we can review to determine if it is hearsay. Despite his complaint about unspecified “investigative hearsay,” Appellant’s larger concern with Havens’ testimony seems to be Havens’ description of the demeanor of Linda and her family members as he interviewed them about the allegations of rape and sexual abuse. The issue seems to fall more naturally within Appellant’s argument that Havens was improperly permitted to bolster the family members’ testimony, and we discuss that argument below.

B. Bolstering

In response to the prosecutor’s questioning, Havens testified that he spoke with Linda about “the events that occurred,” and based upon this discussion he found probable cause to issue a report. In response to a question regarding the demeanor of Linda, her aunt, and her grandmother at the time he met with them to investigate, the accusations, Havens said that Linda would not look him in the eye. He also explained that the aunt and grandmother were upset and anxious. He said they “broke down” as they discussed the abuse, and that he, too, at that point, was overcome with emotion.
Appellant complains that the Commonwealth used this demeanor testimony in its closing argument to bolster the credibility of its witnesses. Appellant concedes that “Havens was very careful not to testify as *683 to the actual statements given to him by the witnesses” but “the purpose of his testimony was to indirectly vouch for the credibility of the witnesses that would follow.” He complains that in a case without forensic medical evidence to support the charges the prejudicial effect of that testimony is significant.
As a general rule, a competent witness may testify concerning matters of which he has personal knowledge, including events he has personally observed and perceived. KRE 602, See Marshall v. Commonwealth, 60 S.W.3d 513, 520 (Ky. 2001) (“[Witness’s] testimony as to what she observed during that time was competent testimony, not hearsay.”). We further clarified in Ordway v. Commonwealth that a witness may.describe another person’s “conduct, demeanor, and statements [] based upon his or her observations to the extent that the testimony is not otherwise excluded by the Rules of Evidence.” 391 S.W.3d 762,777 (Ky.2013).
In McKinney v. Commonwealth, we agreed that characterizations by witnesses of a defendant’s demeanor upon learning of the death of his wife and stepchildren and the destruction of his home, as “non-emotional,” “nothing out of the ordinary,” and “calm, didn’t show any emotion,” were relevant because inferences of guilt or innocence could be drawn from such evidence. 60 S.W.3d 499, 503 (Ky.2001). The same rule would apply to the demeanor of any witness whose demeanor at, a specific time was relevant.[5]
 In opposition to the general rule, Appellant contends that statements describing the anguish of Linda, her aunt and her grandmother were relevant only to bolster, or vouch for, their testimony. It is well'established that a witness may not vouch for the truthfulness of another witness. Stringer v. Commonwealth, 956 S.W.2d 883, 888 (Ky.1997) (citing Hall v. Commonwealth, 862 S.W.2d 321, 323 (Ky.1993)); Hoff v. Commonwealth, 394 S.W.3d 368 (Ky.2011). We are not persuaded that the situation here implicates our rule against improper bolstering.
Havens did not express a view upon the veracity of Linda and her family. He described their demeanor immediately after claims surfaced that another family member had engaged in a disturbing pattern of child sexual abuse. He said the aunt’s and the grandmother’s “eyes were swollen” because' they had been crying; and that they all “broke down.” The rule against bolstering or vouching addresses attempts by one witness to express belief in the credence of another witness. Cf. Bell v. Commonwealth, 245 S.W.3d 738, 744-45 (Ky. 2008)[6] (a social worker’s statement that a child’s testimony seemed “spontaneous” and “unrehearsed” constituted implicit improper bolstering, because it was an attempt to opine upon the veracity of the child.). Here, the overwrought demeanor of Linda’s aunt and grandmother as described by. Haven was not so much of an effort to enhance their credibility— the child’s accusation aloné, believable or not, would reasonably give rise to anguish and sorrow. Rather, the testimony more clearly suggests an effort to arouse sympathy for Linda and her family, which may pose its own relevancy concerns,
Nevertheless, the witnesses’.. distress upon hearing of the allegation of abuse says nothing about the truth of the allega *684 tion. In other words, the revelation of the accusation alone, whether true or false and whether believed or doubted, would understandably provoke emotions of distress and sadness, and it bears little, if any, relevance to a fact in controversy. Upon retrial Havens’ testimony that Linda’s family members were overwrought by the allegations, and that he, too, was emotionally affected by their anguish, should not be admitted.

C. Police Report/Probable Cause

Appellant also complains of Havens’ testimony that upon speaking to Linda ábout her experience, he “found probable cause” to prepare a report so further investigation would ensue. Although ambiguous, Havens’ testimony could be readily understood to mean that he personally believed Linda’s account. While it was certainly relevant and admissible for Havens to explain that he filed his report and further investigation followed, his characterization of the process as having “found probable cause” certainly expresses sufficient belief in the truthfulness of the victim to run afoul of the rule against vouching, and more importantly, the officer’s belief that “probable cause” existed is absolutely irrelevant. Upon retrial, Officer Havens should not be permitted to testify as to his personal finding of “probable cause.”
IV. CONCLUSION
For the foregoing reasons, the judgment of the Christian Circuit Court is vacated, and the proceeding is remanded for a .new trial consistent with this opinion.
All sitting. Minton, C.J., Abramson, and Noble, JJ., concur. Keller, J., dissents. Cunningham, J., dissents by separate opinion in which Barber, J., joins.
ABRAMSON, J.
I join the majority but share the dissent’s grave concerns about this type of continuing sexual abuse case and reiterate that the General Assembly can address the problem, as have the legislatures in sister states, by adopting a “course of conduct” statute for multiple sex crimes against a minor. Johnson, 405 S.W.3d at 456 n.l.

. "Linda” is a pseudonym we use here to protect the anonymity of a child victim/witness.

. RCr 10.26 provides that "A palpable error which affects the substantial rights of a party-may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.”

. "Front” was the term Linda used as a reference to male and female genitalia.

. For example, if a proffered out-of-court statement was relevant for reasons unrelated to whether it was true, factors such as those mentioned in KRE 403 may influence the trial court’s discretion in admitting or excluding the statement.

. KRE 401: " ‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

. Overruled on other grounds by Harp v. Commonwealth, 266 S.W.3d 813 (Ky. 2008).