# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JUNE 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0324-MR

KEVIN RAY MOORE                                                    APPELLANT

V.

ON APPEAL FROM BATH CIRCUIT COURT
HONORABLE DAVID BARBER, JUDGE
NO. 23-CR-00006

COMMONWEALTH OF KENTUCKY                                            APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Kevin Ray Moore appeals from his convictions by the Bath Circuit Court following a jury trial. The jury determined that Moore was guilty of first-degree trafficking in a controlled substance (over two grams of methamphetamine), first-degree trafficking in a controlled substance (fentanyl), possession of a firearm by a convicted felon, and being a persistent felony offender in the first degree (PFO-1). The trial court sentenced him in accordance with the jury's recommendation to a total of fifty years in prison. Moore appeals to this Court as a matter of right. Finding no grounds for reversal, we affirm.

## I. FACTUAL AND LEGAL BACKGROUND

On September 14, 2022, after "running the plates" of a Honda Civic that had left Moore's residence, Officer Cody McDaniel was made aware that the

vehicle was not insured and conducted a traffic stop. During the stop, Officer McDaniel noticed the smell of marijuana and the tense demeanor of the two occupants, a female driver and a male passenger. After informing the driver of the reason for the stop, Officer McDaniel requested she follow him back to his cruiser where he questioned her about the marijuana odor. The driver indicated that her male passenger was a user and that she had dropped off another individual before heading home. Officer McDaniel, a K9 officer who had his dog present in his police car, proceeded to employ his dog to conduct a free air sniff of the vehicle, which indicated the presence of narcotics. The passenger was then questioned about the odor and admitted he had marijuana in the vehicle. Officer McDaniel asked the passenger to exit the vehicle. After the passenger left, Officer McDaniel saw a white powdery substance he believed to be methamphetamine in the vehicle.

During the stop, two vehicles which Officer McDaniel had previously seen at Moore's residence slowly passed by observing the scene. Officer McDaniel believed the occupants of these vehicles were observing him for purposes of warning Moore. At trial, Officer McDaniel would testify that he was "very familiar" with Moore and where he lived.

Ultimately, neither the driver nor the passenger of the Honda was charged with possession, and neither would testify at Moore's trial. Instead, using the information garnered from this stop, Officer McDaniel requested a search warrant for Moore's property which was issued. Additional officers responded to Moore's residence and Moore was detained while the search of his

residence commenced. Moore resided in a camper on property that included a house and at least one out-building near Moore's camper.

The police located and seized: (a) 41.269 grams of a "tan powder/solid with white solids" substance, which was later tested and determined to be fentanyl; (b) 27.665 grams of a "crystalline substance" which proved to be methamphetamine; (c) six "light green round scored tablets" which were found to be oxycodone; (d) a Ruger semiautomatic pistol; (e) drug paraphernalia; (f) scales; and (g) $5000.00 in cash.

Moore's trial took less than one day. The Commonwealth called Officer McDaniel, another officer who had responded to the search, and an employee of the Kentucky State Police Forensics Lab who testified as to the weights and identifications of the drugs seized.

Moore did not testify and called no witnesses. Moore's defense centered upon the fact that no witness had been called to testify that Moore had sold them illegal drugs and, at best, the most he could be found guilty of was possession.

The Commonwealth's position was that Moore had no job or source of income and therefore the cash, along with the scales and the incredibly large amounts of drugs seized, clearly indicated trafficking. To this end, the Commonwealth elicited testimony that the roughly 42 grams of fentanyl constituted at least 400 individual doses.

The jury found Moore guilty on each count for which he was tried: two counts of trafficking in a controlled substance, first degree, Kentucky Revised

3

Statutes (KRS) 218A.1412; and one count of being a convicted felon in possession of a handgun, KRS 527.040. The jury initially recommended Moore receive sentences of ten years on each of the trafficking counts, which the jury then enhanced to twenty years based on his PFO-1 status. The jury recommended that each sentence be served consecutively, and the trial court sentenced Moore in accordance with this recommendation to a total of fifty years in prison.

## II. ANALYSIS

Moore raises two issues on appeal, both of which concern the same testimony. Moore argues the trial court erred by allowing Officer McDaniel to offer hearsay testimony impermissibly "inferring" to the jury that the occupants of the Honda told Officer McDaniel that Moore had sold them methamphetamine. To Moore, that hearsay served as both the basis for the search warrant and the reason Moore was convicted of trafficking instead of mere possession.

According to Moore's argument, Officer McDaniel's testimony constituted impermissible "investigatory hearsay" which also, in effect, deprived him of his constitutional right to confront his actual accusers, the occupants of the Honda.

### A. Officer McDaniel's Testimony

The Commonwealth called Officer McDaniel to testify at trial and the following exchanges took place:

> Commonwealth: Okay, and can you explain to me why you arrested Mr. Moore?
>
> Officer McDaniel: Based off information from a traffic stop that I'd done.

At that point, Moore's counsel objected, fearing that the Commonwealth would be eliciting hearsay from Officer McDaniel by having him repeat the statements made to him by the occupants of the Honda who were not going to be called by the Commonwealth to testify. Specifically, Moore's counsel stated to the trial court, "[o]ur objection is this witness should not be allowed to testify to what the occupants of the car said."

The trial court advised the Commonwealth that Officer McDaniel could not repeat what he had been told by the occupants but could "testify about the circumstances under which he had reasonable belief to obtain the search warrant." Questioning resumed, resulting in the following exchanges cited by Moore:

> Commonwealth: And after you located the methamphetamine you observed what you did, spoke to those individuals, what was your next step?
>
> Officer McDaniel: To contact your office.
>
> Commonwealth: Okay, and why did you contact my office?
>
> Officer McDaniel: I gave you the information from that point. I contacted you to see if there was enough probable cause to conduct a search warrant on the residence.
>
> Commonwealth: Okay and did I say that there was enough probable cause for search warrant?
>
> Officer McDaniel: You did.

5

Commonwealth: Okay, and after that point what did you do?

Officer McDaniel: After that we contacted a judge, he goes over the information inside of the search warrant and grants it or denies it.

Commonwealth: Okay and in this case did the judge say there was enough probable cause for a search warrant?

Officer McDaniel: He did.

No objection was raised or renewed by Moore during this questioning.

According to Moore's argument, "the only non-hearsay basis" to which Officer McDaniel testified that supported the search warrant was his testimony that he saw two other cars which had come from Moore's residence observing Officer McDaniel's stop of the Honda.

Moore asserts that despite, or in circumvention of, the trial court's instruction, the Commonwealth effectively:

> [R]epresented to the jury that Moore had been identified as the source of the narcotics by the car's occupants during the traffic stop as exhibited by not only his personal decision to seek a search warrant, but the implicit vouching effect in asserting that both a judge and the same prosecutor conducting the trial personally credited the identification.
> . . . .
>
> Put simply, the jury could easily infer from the testimony that the occupants of the car had named Mr. Moore. This was clear hearsay, as to the most incriminating evidence [of trafficking] against Mr. Moore.

## B. Was Officer McDaniel's Testimony Impermissible Hearsay?

In his brief, Moore acknowledges that "this court has previously remarked that 'investigative hearsay' is a misleading and non-descriptive

term[,]"[1] but still chose to use the terminology. This Court has done more than describe the term as misleading; we have attempted to purge its usage entirely.

In *Ruiz v. Commonwealth*, 471 S.W.3d 675, 680–81 (Ky. 2015), we stated:

> Lest our repetition of the term "investigative hearsay" be misconstrued, we state here without equivocation: there is no such thing in our jurisprudence as "investigative hearsay." There is no special rule of evidence known as "investigative hearsay." The term simply is not a part of the evidentiary lexicon.
>
> Despite our condemnation in *Sanborn v. Commonwealth*, 754 S.W.2d 534, 541 (Ky. 1988) (overruled on other grounds by *Hudson v. Commonwealth*, 202 S.W.3d 17, 22 (Ky. 2006)), of what has been termed the "investigative hearsay" rule, it is still invoked on occasion. Perhaps we have failed in our decisions to vanquish it with sufficient vigor to send the message. *We said in Sanborn, "Prosecutors should, once and for all, abandon the term 'investigative hearsay' as a misnomer, an oxymoron." We now extend that suggestion to all of the bench and bar.*

(Emphasis added).

In *Ruiz*, this Court attempted to explain that the term creates a false impression that there is a "unique species of hearsay" and "muddle[s] the analysis" of our conventional rules regarding hearsay. *Id.* at 81.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Kentucky Rules of Evidence (KRE) 801(c). A police officer's testimony, just like that provided by witnesses, victims, or defendants, is subject to the same hearsay rules found in KRE 801A, 802, 803, and 804.

---

[1] Moore took this statement from *Morris v. Commonwealth*, 2019-SC-0606-MR, 2021 WL 1133612, at *7 (Ky. Mar. 25, 2021) (unpublished).

Officer McDaniel did not repeat anything said to him by either occupant of the Honda nor did he even attempt to paraphrase what he had been told. However, "[i]t is a witness's testimony about the substance of an out-of-court speaker's statement, and not merely a verbatim recitation of the statement, that is problematic and barred by the hearsay rule." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 325 (Ky. 2016). "A police officer's "conclusion" or "summary" of information gleaned from investigatory interviews, such as [the officer's] testimony here, is no less hearsay than the interviewees' statements on which it is based." *Id.*

In *Dickerson,* this Court determined an officer's testimony to be hearsay because it was "essentially that the fourteen or so people he interviewed during his investigation stated that there was no truth to the [defendant's alibi] story." *Id.* The Commonwealth elicited this testimony specifically to prove the "truth of the matter," which was the defendant's alibi was in fact a lie crafted to hide his crime. We explained, "[h]ere, the fourteen interviewees made the out-of-court statements asserting the matter offered into evidence—that the [alibi] was untrue. And the in-court testimony relaying those out-of-court statements to the jury, albeit by summarizing them, was certainly offered to prove the truth of the matter they asserted." *Id.* at 324.

That same understanding of an officer's hearsay testimony was implicit in *Sanborn,* in which this Court held that a police officer's testimony about conclusions he drew from interviewing dozens of people and "did not obtain any information from the people whom he interviewed verifying the appellant's

8

alibi," was inadmissible hearsay. 754 S.W.2d at 542, *overruled on other grounds by, Hudson v. Commonwealth,* 202 S.W.3d 17 (Ky. 2006).

In both *Dickerson* and *Sanborn,* the officer was in reality restating and summarizing what he had been told by others and repackaging it as a "summary" or "conclusion" in a broad attempt to avoid our hearsay rules. However, that is not what occurred during Moore's trial. Officer McDaniel's testimony did not restate or summarize anything he was told by the Honda's occupants and—at most—what he *might* have been told would have explained the actions he took in seeking a warrant and conducting a search. This is not hearsay because such testimony was not offered "to prove the truth of the matter [Moore trafficking drugs] asserted." Rather, what Officer McDaniel conveyed was offered to explain the actions he took which were relevant regardless of whether the (allegedly inferred) statements were true or false.

The jury heard sufficient competent evidence from which it could infer, from the full circumstances, that Moore was trafficking illegal drugs. Moore was unable to provide any witnesses of his own or develop any testimony during cross-examinations of the Commonwealth's witnesses to support the notion that he was not trafficking the drugs seized at his residence. Officer McDaniel's limited testimony regarding the stop of the Honda, which came from the direction of Moore's residence, was not central to the Commonwealth's case. The Commonwealth's evidence focused on the amounts of illegal drugs confiscated from Moore together with testimony that such amounts could not have been for personal use. Such evidence together with his scales,

9

inexplicable amounts of cash on hand, and a handgun (in the possession of a convicted felon) were more that sufficient evidence to support Moore's trafficking convictions. A review of the Commonwealth's opening statement and closing argument reinforces this conviction. At no point in the trial did the Commonwealth attempt to convey the idea that the Honda's occupants or anyone else had told Officer McDaniel that Moore was dealing. In contrast, it was Moore's counsel who highlighted the fact that no one had testified, or had been called to testify, that Moore was trafficking in an ultimately fruitless effort to convince the jury that Moore could not be guilty of any crime greater than possession.

## C. Was Moore's Right to Confront Witnesses Violated?

Moore also argues that the trial court erred by allowing what was, in substance, a violation of his Sixth Amendment right to confrontation, by allowing Officer McDaniel to testify in lieu of the occupants of the Honda. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.").

The Confrontation Clause forbids the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53–54 (2004); *see also Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 309 (2009) ("A witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the

10

witness is unavailable, the defendant had a prior opportunity for cross-examination.") (citing *Crawford,* 541 U.S. at 54).

Therefore, whether Officer McDaniel's testimony (allegedly inferring what witnesses had told him) violated Moore's confrontation rights turns on whether: (a) the out-of-court statements were testimonial; (b) the out-of-court speakers were unavailable to testify; and (c) Moore had an opportunity to cross-examine them. Only the first issue concerns us as there was no proof offered that the vehicle's occupants were unavailable and, since they were not otherwise present at trial,[2] Moore did not cross-examine either one.

However, similar to our determination regarding whether Officer McDaniel's testimony was hearsay, we can readily state that his testimony was not impermissible under the Confrontation Clause. Officer McDaniel's limited testimony regarding the traffic stop was a factual representation of what he witnessed himself and did not serve as a restatement of anything told to him by either occupant. We can not agree that the "fact" that Officer McDaniel sought a search warrant of Moore's residence given the information gathered from that stop equates to "testimonial" representations that either occupant specifically informed him that Moore had sold them the methamphetamine found in their vehicle. Additionally, Moore knew the identities of both of the vehicle's occupants prior to trial and could have subpoenaed one or both if he actually

---

[2] Moore does not assert that he was unable to subpoena the two witnesses himself or even attempted to do so.

11

believed their testimony would have either assisted his defense or undermined the Commonwealth's case against him.

Even were we persuaded that a violation of Moore's confrontation rights had occurred, it would not necessarily mean that his convictions must be reversed. Reversal is required only if the error was not harmless. *See* Kentucky Rules of Criminal Procedure (RCr) 9.24. Because this would be a constitutional error, the harmlessness threshold is much higher than for non-constitutional errors; the standard here is whether we are convinced "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24 (1967); *see also Taylor v. Commonwealth,* 175 S.W.3d 68, 72 (Ky. 2005) (applying constitutional-harmless-error analysis to *Crawford* violation). As this Court has explained, the analysis "involves considering the improper evidence in the context of the entire trial and asking whether there is a 'reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Staples v. Commonwealth,* 454 S.W.3d 803, 826–27 (Ky. 2014) (quoting *Talbott v. Commonwealth,* 968 S.W.2d 76, 84 (Ky. 1998)).

"The question . . . is whether the improper evidence was of a weight, was of a striking enough nature, or played a prominent enough role in the Commonwealth's case to raise a reasonable possibility that it contributed to the conviction." *Id.* at 827. Considering this standard, examining the limited nature of the allegedly constitutionally-offensive evidence in the context of the entire trial, and in light of the overwhelming evidence of Moore's guilt we have

12

already discussed, the Court would still determine any such error would have been harmless beyond a reasonable doubt. Simply put, we are convinced that no reasonable juror would have relied on the allegedly inferred testimonial evidence in convicting Moore. Thus, there was no reasonable possibility that it contributed to his conviction.

## III. CONCLUSION

We affirm Moore's convictions and the sentences imposed by the Bath Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Ned Pillersdorf
Pillersdorf Law Offices

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General

Courtney J. Hightower
Assistant Attorney General