RENDERED:  OCTOBER 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0991-MR

MELISSA BARKER                                           APPELLANT

                 APPEAL FROM KENTON CIRCUIT COURT
v.              HONORABLE KATHLEEN LAPE, JUDGE
                   ACTION NO. 22-CR-01171

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND LAMBERT, JUDGES.

CETRULO, JUDGE:  Appellant Melissa Barker ("Barker") appeals her conviction and 12-year prison sentence for first-degree fleeing or evading and being a first-degree persistent felony offender.  After review, we affirm.

## BACKGROUND & FACTS

At approximately 10:00 p.m. on September 9, 2022, police observed a silver Ford F150 truck traveling south on Interstate 75 ("I-75") without functioning taillights and changing lanes without signaling. Police directed the driver to pull over, but the truck continued down the interstate for approximately 10 miles. Eventually, police cruisers conducted a rolling roadblock to stop the truck. Police then arrested the driver, Barker, for fleeing or evading police, possession of an open alcoholic beverage in the motor vehicle, no taillights, and reckless driving.

In November 2022, a Kenton County grand jury indicted Barker on two charges: Count 1, fleeing or evading police in the first-degree (a felony in violation of Kentucky Revised Statute ("KRS") 520.095); and Count 2, operating a motor vehicle while under the influence ("DUI") second offense (a misdemeanor in violation of KRS 189A.010). In July 2023, the grand jury added Count 3, being a persistent felony offender ("PFO") in the first-degree in violation of KRS 532.080.

In May 2024, the Kenton Circuit Court held a two-day trial.[1] In its case-in-chief, the Commonwealth called two Erlanger Police patrol officers,

---

[1] Barker attempted to plead guilty prior to trial, but during the plea colloquy, her allocution failed to satisfy the elements of the charged offense and resulted in the court's rejection of her plea.

Robert Martin ("Officer Martin") and Clayton Dennison ("Officer Dennison"). Barker took the stand in her defense but called no other witnesses.

Officer Martin testified that a fellow patrolman attempted to stop Barker's vehicle for traffic violations, but she failed to yield. He stated that he was involved for about three or four miles of the "chase" where he witnessed Barker's speed "fluctuat[e] randomly" and her vehicle change lanes without signaling. He could not recall whether she drove in an evasive manner nor whether she exceeded the speed limit. He testified that officers ended the pursuit by conducting a rolling roadblock, *i.e.*, boxing her in and gradually slowing her vehicle to a stop.

Officer Dennison testified that he observed Barker's vehicle "swerve across all lanes of traffic with no taillights." He stated that, in gradual sequence, he turned on his blue lights, then his siren, then his rumble siren,[2] then told her (by name) to stop through his public address system, but Barker did not pull over. Officer Dennison asserted that during this 10-mile pursuit, Barker's speed fluctuated between 35 and 60 miles per hour and involved a "minimum of four" police vehicles. The officer recalled that traffic that night was "moderate" and "too many cars to count" had to move out of her path. He stated, "the way she was swerving, unable to maintain her lane, she almost caused numerous crashes to the vehicles on the left and right of her as she was passing them." As the pursuit

---

[2] A separate, independent low-tone siren that can be felt, as well as heard.

continued from Kenton County into Boone County, police slowed traffic ahead of her and moved cars to the side in order to decrease her threat to public safety.

The Commonwealth played portions of Officer Dennison's body camera footage. On the footage, Officer Dennison can be heard saying to dispatch, "She's almost struck four cars. She's swerving all over the place." Additional body camera footage showed Barker after her arrest. She appeared confused as to why police arrested her and stated she "didn't do anything wrong." Officer Dennison testified that she was cooperative at the police station, but when he administered an intoxilyzer, it registered a blood alcohol concentration of .232. Body camera footage captured Officer Dennison telling Barker, "you almost crashed a few other cars." Barker responded by denying any wrongdoing and saying, "almost and did is two different things."

At the close of the Commonwealth's case, the defense moved for a directed verdict, but the circuit court denied the motion.

Barker testified that in the years preceding this incident, both of her parents and her son passed away, and she turned to alcohol in her grief. She explained that on the night in question she was crying, had the radio at high volume, and did not realize police had been attempting to pull her over. She admitted to driving while intoxicated but asserted she stopped as soon as she realized police wanted her to stop.

After deliberations, the jury found Barker guilty of Count 1 (fleeing or evading), Count 2 (DUI),[3] and Count 3 (PFO). Relevant to Count 1, Jury Instruction V informed the jury that they could only find guilt if they believed (A) Barker operated her vehicle "with the intent to flee or elude[,]" **and** (B) she knowingly or wantonly disobeyed a direction to stop by a police officer, **and** (C) she was operating her vehicle with an alcohol concentration of or above 0.08 **or** (D) her act of fleeing or eluding caused or created a substantial risk of serious physical injury or death to any person or serious injury to property.

After the verdict, the court polled the jury, and some jurors found Barker guilty under instruction V(C) (operating while under the influence) while other jurors found guilt under instruction V(D) (creating a substantial risk).

In the penalty phase, the jury recommended a sentence of three years of incarceration for fleeing or evading, enhanced to 16 years (due to her PFO status). At sentencing in July 2024, the circuit court asserted that the jury-recommended sentence was "a little much" and imposed a three year sentence enhanced to 12 years. Barker appealed.

---

[3] The Commonwealth moved to dismiss Count 2 as violative of double jeopardy, and the court granted the motion.

## ANALYSIS

On appeal, Barker argues the circuit court erred by denying her motion for a directed verdict and accepting a verdict that was not unanimous.

### A. Directed Verdict

> To obtain a conviction of a defendant, the Commonwealth has the burden to prove beyond a reasonable doubt each element of the crime charged. On the motion for a directed verdict, the single controlling question for the trial court is whether the Commonwealth has sustained the burden of proof by more than a scintilla of evidence, with such evidence being of probative value and of the quality to induce conviction in the minds of reasonable men. When the evidence is insufficient to induce reasonable jurors to believe beyond a reasonable doubt that a defendant is guilty, a verdict may be directed. When assessing the evidence, the trial court must consider the Commonwealth's evidence as a whole, assume the evidence is true, and draw all reasonable inferences from the evidence in favor of the Commonwealth. The trial court may not consider questions of weight and credibility, those being the province of the jury. The trial court's denial of a directed verdict may only be reversed by an appellate court when "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt."

*Culver v. Commonwealth*, 590 S.W.3d 810, 812-13 (Ky. 2019) (citations omitted).

For first-degree fleeing or evading, the Commonwealth's burden was to prove that "while operating a motor vehicle with intent to elude or flee, [Barker] knowingly or wantonly disobey[ed] a direction to stop . . . her motor vehicle, given by a person recognized to be a police officer . . . [while] driving under the influence of alcohol . . . or [b]y fleeing or eluding, [she caused], or create[d]

-6-

substantial risk, of serious physical injury or death to [a] person or property[.]"
KRS 520.095(1)(a)2., 4. The Commonwealth argued overlapping theories; the
Commonwealth attempted to convince the jury that Barker intended to flee and
knowingly or wantonly disobeyed Officer Dennison's directions to pull over while
under the influence of alcohol *and* created a substantial risk of serious physical
injury or death. To find guilt, the jury needed only to believe *either* that Barker
drove while under the influence *or* created a substantial risk. During her trial
testimony, Barker admitted to driving while under the influence of alcohol. While
Barker challenged the intent (to elude or flee) and the knowingly/wantonly prongs
of KRS 520.095(1)(a) at trial, she does not challenge those aspects on appeal.

On appeal, Barker argues the court erred in denying her motion for a
directed verdict because the Commonwealth failed to present sufficient evidence
that she created *a substantial risk of serious physical injury or danger of death or
serious injury to property*. Barker argues "there was an overall dearth of evidence
of any substantial risk" because she was driving in a non-evasive manner, mostly
below the speed limit, and in little danger of hitting other vehicles as the police had
pulled traffic to the side of the road.

"[A] substantial risk is a risk that is ample, considerable in degree or
extent, and true or real, not imaginary[.]" *McCleery v. Commonwealth*, 410
S.W.3d 597, 602 (Ky. 2013) (quoting *Bell v. Commonwealth*, 122 S.W.3d 490, 497

(Ky. 2003)). "[W]hether [Barker]'s act of fleeing police created a 'substantial risk' of death or serious physical injury depends on the proof and reasonable inferences that can be drawn from the evidence, with each case presenting its own unique circumstances." *Culver*, 590 S.W.3d at 817 (citing *Bell*, 122 S.W.3d at 497). Such a risk assessment may consider "the manner in which a vehicle is operated and the conditions under which that vehicle is operated." *Id.*

An intoxicated driver swerving her vehicle across multiple lanes of traffic on a major highway at nighttime, thereby instigating a 10-mile, two-county pursuit, created considerably more than an "imaginary" risk. While Barker did not drive at high speeds (only up to five miles per hour over the speed limit), she nonetheless committed other traffic violations (swerving/reckless driving, failing to signal, no functioning taillights) on a moderately congested roadway. The officers testified that she almost caused numerous accidents and was a threat to other drivers. Police had to move other vehicles out of harm's way, stop traffic at night on a major highway, and conduct a rolling roadblock in order to stop Barker's truck. Under the evidence as a whole, it would not be clearly unreasonable for a jury to find Barker's act of fleeing caused or created a substantial risk of serious physical injury or death to another person or serious injury to property. As such, we find no error in the court's denial of Barker's motion for a directed verdict.

**B. Unanimity**

Next, Barker alleges she was denied her right to a unanimous jury verdict, because (1) the jurors were split on Jury Instruction V(C) and V(D), and the Commonwealth did not sufficiently establish V(D); and (2) the combination jury instruction (allowing alternating theories of guilt) prevented unanimity.[4]  Such alleged unanimity errors are questions of law that we review *de novo*.  *Sexton v. Commonwealth*, 647 S.W.3d 227, 231 (Ky. 2022) (citation omitted).

A defendant cannot be convicted of a criminal offense except by a unanimous verdict.  KY. CONST. § 7; KRS 29A.280(3); Kentucky Rule of Criminal Procedure 9.82(1).  "A combination instruction permits a jury to convict 'of the same offense under either of multiple alternative theories[.]'"  *Commonwealth v.*

---

[4] Additionally, Barker cites *Ruiz v. Commonwealth* when calling into question the unanimity of the verdict.  471 S.W.3d 675 (Ky. 2015).  She argues that "a verdict is not unanimous unless all of the jurors based their conviction of the defendant on the same criminal act."  However, *Ruiz* is factually distinguishable.  In *Ruiz*, the defendant ("Ruiz") was indicted for sexual abuse and sodomy based "on many occasions within the five-month period" where the defendant allegedly forced sexual contact upon the victim.  *Id.* at 677.  At trial, testimony described a course of conduct that was "generalized, nonspecific and undifferentiated[,]" but did not isolate or identify any individual episode of sexual abuse or sodomy.  *Id.* at 679.  On appeal, Ruiz argued the jury instructions were improper "because they each charged a single crime out of numerous indistinguishable allegations," thereby calling into question the unanimity of the guilty verdict.  *Id.* at 677.  Our Supreme Court stated that such broad instructions are not improper when the evidence relates to a single, unambiguous occurrence, "but when the evidence equally suggests the commission of two or more similar crimes, the potential for unanimous verdict problems arise."  *Id.* at 678.  Ultimately, the *Ruiz* Court reversed the judgment and remanded for a new trial.  *Id.* at 679.  However, we do not have vague, unspecified, multiple occurrences supporting the charges.  Here, there was only one act:  Barker driving on I-75 on September 9, 2022.

*Roark*, 686 S.W.3d 124, 128 (Ky. 2024) (quoting *Brown v. Commonwealth*, 553

S.W.3d 826, 839 (Ky. 2018)).

> A "combination" instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory. It is not necessary that a jury, in order to find a verdict should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other. . . .

*Id.* (quoting *Cox v. Commonwealth*, 553 S.W.3d 808, 812 (Ky. 2018)) (internal

quotation marks omitted). Here, as the evidence supports conviction under both

theories, the requirement of unanimity is satisfied.

In *Cox*, *supra*, our Kentucky Supreme Court addressed a similar

instruction issue in a murder case. The defendant ("Cox") was charged with the

murder of his infant son. 553 S.W.3d at 810. The jury received a combination

murder instruction allowing the jury to find guilt if it found that Cox caused his

son's death by "hitting, shaking or both." *Id.* at 811. The Court found that there

was no unanimity error because any dispute about the means that Cox used to

commit the murder did not matter as all 12 jurors agreed that the Commonwealth

proved that Cox caused his son's death. *Id.* at 813. The Court also found that the

instruction allowing for Cox's conviction under either intentional or wanton

-10-

murder did not result in an unanimity error because the evidence supported a conviction under either mental state.  *Id.* at 814.

Here, as noted above, a finding of guilt for fleeing or evading in the first-degree did not require the jury to believe Barker drove while under the influence *and* that her fleeing caused substantial risk; the jury only needed to believe one of those two prongs.  As established, Barker does not challenge V(A) the intent and V(B) wantonly/knowingly aspects on appeal.  She admitted to driving under the influence of alcohol at trial V(C), and a reasonable juror could have believed she created a substantial risk of serious physical injury or death V(D).  After polling, it became clear that all jurors found she met the requirements of KRS 520.095(1)(a), believing her guilty under Jury Instruction V (A, B, and C) *or* (A, B, and D).

"[A] 'combination' instruction permitting a conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory."  *Miller v. Commonwealth*, 77 S.W.3d 566, 574 (Ky. 2002) (citing *Johnson v. Commonwealth*, 12 S.W.3d 258, 265-66 (Ky. 1999)); *see also Halvorsen v. Commonwealth*, 671 S.W.3d 68, 73 (Ky. 2023) (citing *King v. Commonwealth*, 554 S.W.3d 343, 352 (Ky. 2018)) ("Kentucky law is clear that 'jurors may reach a unanimous verdict even though they may not all agree upon

-11-

the means or method by which a defendant has committed the criminal act.'"). Thus, the fact that some jurors believed she was operating her vehicle over the legal limit while others believed she created a substantial risk does not preclude a finding of guilt or negate the verdict's unanimity.

## CONCLUSION

Therefore, we AFFIRM the Kenton Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Nicholas Nash
Christel Nash
Lexington, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky